IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PACIFIC OIL AND GAS, LLC,                          )
                                                   )
EDWIN C. BROWN, TRUSTEE OF                         )
EDWIN C. BROWN FAMILY TRUST,                       )    Case No. _____
                                                   )
OIL AND GAS TECHNOLOGY,                            )
                                                   )
WILLIAM GUMMA, TRUSTEE OF ORINOCO                  )
REVOCABLE TRUST DATED JANUARY 7,                   )
1999,                                              )
                                                   )
CONOVER H. ABLE, III,                              )
                                                   )
BILL PEARSON,                                      )
                                                   )
JONATHAN S. WIMBISH, TRUSTEE OF J&M                )
WIMBISH FAMILY TRUST,                              )
                                                   )
CHARLES G. CLARK,                                  )
                                                   )
RONALD J. LINCOLN,                                 )
                                                   )
JOHN HORNE,                                        )
                                                   )
CLARENCE COTTMAN,                                  )
                                                   )
ERIN R. COTTMAN,                                   )
                                                   )
CLAIRE C. KENEALLY,                                )
                                                   )
JOHN S. KENEALLY,                                  )
                                                   )
IAN M. KENEALLY,                                   )
                                                   )
SUSAN C. CONNELL, AND TRUSTEE OF                   )
CP MANAGEMENT TRUST,                               )
                                                   )
all individually and derivatively on behalf of    )
CHISHOLM PARTNERS, LLC,                            )
                                                   )
                    Plaintiffs,                    )
                                                   )
v.                                                 )

CHESAPEAKE ENERGY CORP.,                )
                                                                    )
CHESAPEAKE EXPLORATION, L.L.C.,    )
                                                                    )
TOM L. WARD,                                        )
                                                                    )
AND JOHN DOES 1–50,                          )
                                                                    )
            Defendants.                                )

## PLAINTIFFS' COMPLAINT

Plaintiffs, through their undersigned attorneys, file this complaint and would show as follows:

## NATURE OF THE ACTION

1.  This action arises out of a conspiracy to depress the market for purchases of oil and natural gas leasehold interests and properties containing producing oil and natural gas wells, in violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 3. The conspiracy commenced on or around December 27, 2007, and continued until at least March 31, 2012 (the "Relevant Time Period").   This conduct resulted in a criminal indictment against Aubrey K. McClendon, a former executive of Defendant Chesapeake Energy Corp., for violations of Section 1 of the Sherman Act.   See *United States v. Aubrey K. McClendon*, No. CR-16-043, (W.D. Okla. March 1, 2016).

## JURISDICTION AND VENUE

2.  This complaint is filed under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§5 and 26, to recover treble damages, equitable relief, costs of suit, and reasonable attorneys' fees for violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§1, 3.  The Court has original federal question jurisdiction over the Sherman Act claim

asserted in this complaint pursuant to 28 U.S.C. §§1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26.

3.   Venue is proper in this District because the defendants reside, transact business, are found within this District, and/or have agents within this District, a substantial part of the events giving rise to Plaintiffs' claims occurred and/or a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

4.   This Court has personal jurisdiction over Defendants under 15 U.S.C. §22 and because, inter alia, each: a) transacted business in this District; b) purchased leasehold interests and producing properties in this District; c) have substantial aggregate contacts with this District; and d) engaged in an illegal price-fixing, bid-rigging and customer and market allocation conspiracy that was directed at, and had the intended effect of, causing injury to, persons and entities residing in, located in, or doing business in this District.

## PLAINTIFFS

5.   The following plaintiffs were all members of or are successors in interest to members of Chisholm Partners, LLC ("Chisholm") who sold their membership interests in Chisholm to Chesapeake Exploration, LLC effective December 1, 2011 (jointly the "Member Plaintiffs"):  Pacific Oil And Gas, LLC, Edwin C. Brown, Trustee of Edwin C. Brown Family Trust, Oil And Gas Technology, William Gumma, Trustee of Orinoco Revocable Trust dated January 7, 1999, Conover H. Able, III, Bill Pearson, Jonathan S. Wimbish, Trustee of J&M Wimbish Family Trust, Charles G. Clark, Ronald J. Lincoln, John C. Horne, Clarence Cottman, Erin R. Cottman, Claire C. Keneally, John S. Keneally and Ian M. Keneally, and Susan C. Connell, Trustee of CP Management Trust.  They

bring these claims individually and derivatively on behalf of Chisholm to the extent necessary and permitted.

6.   Chisholm Partners, LLC is a limited liability company formed under the laws of the state of Louisiana.

## DEFENDANTS

7.   Defendant Chesapeake Energy Corp. is a corporation organized under Oklahoma law doing business in Kansas with its principal place of business in Oklahoma.

8.   Chesapeake Exploration, L.L.C. is a limited liability company organized under Oklahoma law doing business in Kansas. Chesapeake Exploration, L.L.C. is made up of three members, Chesapeake Operating, L.L.C., Chesapeake E&P Holding Corporation, and Chesapeake Appalachia, L.L.C.   Chesapeake E&P Holding Corp. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Chesapeake Appalachia, L.L.C. is a limited liability company with Chesapeake Energy Corporation as its sole member.   Chesapeake Energy Corporation is a corporation organized under Oklahoma law doing business in Kansas with its principal place of business in Oklahoma.

9.   Unless otherwise noted, the Complaint refers to Chesapeake Energy Corp. and Chesapeake Exploration, LLC, collectively as "Chesapeake."

10.    Defendant Tom L. Ward is the former CEO of SandRidge Energy Corp. ("SandRidge"), a corporation existing and operating under the laws of the State of Delaware doing business in Kansas and which has filed for bankruptcy protection.

00316184-1                                                4

11. Defendants John Doe Nos. 1–50 are other entities or persons whose identities are currently unknown to Plaintiffs. John Doe Nos. 1–50 are alleged to have participated in the unlawful restraint of trade, and described herein.

## AGENTS

12. The acts Defendants have allegedly committed were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs in the purchase of the leasehold interests and producing properties.

## INTERSTATE TRADE AND COMMERCE

13. Throughout the Relevant Time Period, Defendants, and their conspirators' conduct with respect to the purchase of leasehold interests and producing properties that are the subject of this Complaint were within the continuous and uninterrupted flow of, and substantially affected, interstate trade and commerce, which included: a) Entering into and executing transactions for the purchase of leasehold interests and producing properties that included purchasers and sellers from different states; b) Transferring or causing the transfer of money or payments across state lines in connection with purchases of leasehold interests and producing properties; and c) Selling oil, natural gas, and natural gas liquids in interstate commerce.

## FACTUAL ALLEGATIONS

### A. STRUCTURE, CONDUCT, AND PERFORMANCE OF THE MARKET FOR LEASEHOLD INTERESTS AND PRODUCING PROPERTIES

14.  A leasehold interest in an oil and gas lease generally grants the lessee the right to develop the mineral interests to explore for and extract oil, natural gas, and natural gas liquids for a certain length of time.  The typical oil and natural gas lease spans three to five years.  However, the lease is considered "held by production" and continues indefinitely if the lessee extracts "production in paying quantities"; that is, the lessee produces quantities sufficient to yield a return, however small, in excess of "lifting expenses," even though well drilling and completion costs might never be repaid.  The lease is held by production so long as the lessee maintains production in paying quantities.

15.  In the oil and gas industry, exploration and production companies, such as Chesapeake and SandRidge, frequently compete to purchase leasehold interests and interests in properties that are already producing in paying quantities as well as those not yet producing.  "Producing properties" are tracts of land with existing wells that are actively producing oil, natural gas, or natural gas liquids.  Such competition increases the prices of these leasehold interests, resulting in more money for the owners of those interests.

16.  The current lessee of the interest may sell producing properties to exploration and production companies, such as Chesapeake and SandRidge.  This transaction typically includes the underlying leasehold estate and the drilling infrastructure.

17.  In the present case, Chesapeake and SandRidge were engaged in the business of oil, natural gas, and/or natural gas liquid exploration, development and production during the Relevant Time Period.  They were actual and potential competitors for the acquisition of the types of leasehold interests and producing properties described above, many of

which are located in Oklahoma, Texas, Colorado, and Kansas and subject to the combination and conspiracy alleged in this Complaint. The leasehold interests in question comprise a geological formation referred to as the "Anadarko Basin Region."

18. The Anadarko Basin Region, as that term is defined in this Complaint, includes the Anadarko basin, the Anadarko Woodford Shale Play, the South Oklahoma Woodford Shale Play, and the Mississippian Lime Play. The Anadarko Basin Region is one of the deepest and most prolific hydrocarbon producing fields in the continental United States. The basin reaches into parts of northwest Oklahoma, north Texas, southeast Colorado, and Kansas. Among other locations, the Anadarko Basin Region is located within various counties of Oklahoma, Kansas, Texas and Colorado.

### B. PLAINTIFFS' LEASEHOLD INTERESTS

19. Beginning in 2010, Chisholm acquired numerous oil and gas leases covering approximately 7,300 acres located in Harper and Sumner Counties, Kansas and approximately 21,320 acres located in Kingman County, Kansas ("Kansas Leasehold Interests"). The Member Plaintiffs owned membership interests in Chisholm at all relevant times.

20. Chisholm entered into discussions with several companies, including Shell Oil, SandRidge and Chesapeake, about the purchase and sale of its Kansas Leasehold Interests. At that time, all three companies, but particularly, Chesapeake and SandRidge, were aggressively acquiring mineral leasehold interests in Northern Oklahoma and Southern Kansas, including Harper, Sumner and Kingman counties.

21. As negotiations progressed, the main competitors for the Kansas Leasehold Interests became Chesapeake and SandRidge, whose competing bids caused the price to

increase.  Then, without any forewarning or explanation, SandRidge suddenly ceased communications with Chisholm about its Kansas Leasehold Interests.

22. On or about January 25, 2011, Chisholm entered into a Letter of Intent with Chesapeake to sell its interest in certain Harper and Sumner Counties leases covering approximately 1,800 acres for $500 per net leasehold acreage or a total of $900,000.

23. On or about June 6, 2011, Chisholm entered into a Letter of Intent with Chesapeake to sell its interest in Sumner County leases covering approximately 5,500 acres for $500 per net leasehold acreage or a total of $2.75 million.

24. On or about October 31, 2011, Chisholm entered into a Letter of Intent with Chesapeake to sell its interest in Kingman County leases covering approximately 21,320 acres for $500 per net leasehold acreage or a total of $10.66 million.

25. In 2011, leasehold interests covering the Anadarko Basin Region had obtained a market value in excess of $1,000 per acre.

26. In addition to the foregoing, Chisholm's lease broker, Richard McKee, working at below market rates, required an Overriding Royalty Interest ("ORRI") in the Kingman County leases he acquired for Chisholm.  Once SandRidge dropped out of the bidding, Chesapeake refused to grant an ORRI on the leases, so Chisholm was required to pay $202,000 to Mckee for his ORRI in order to sell the leases to Chesapeake.

27. Effective December 1, 2011, Chesapeake purchased 100% of the membership interests of Chisholm Partners, LLC.  Subsequently, Chesapeake sold the mineral leasehold interests it acquired from Plaintiffs to SandRidge.

28. In addition to the foregoing, plaintiff William Gumma, Trustee of the Orinoco Revocable Trust dated January 7, 1999 ("Orinoco"), individually and separate and apart

from Chisholm, owned land in Harper County, Kansas. Representatives of Orinoco were first approached to lease the oil and gas rights on its land in Harper County in mid-2010 by SandRidge, which subsequently leased 480 acres in September and October 2010 for $100 per acre and a 1/8th royalty for a three year lease.

29. Activity accelerated and as the geographic area of interest spread through 2010 and into 2011, Chesapeake became an active competitor with SandRidge. Orinoco had multiple competitive offers and multiple top leases between the two companies from January through March 2011, ultimately leasing 1200 acres to Chesapeake for $500 and $550 per acre at a 1/5th royalty.

30. By mid-2011 most of Orinoco's land was leased, but drilling activity continued to increase in the area and prices rose to $750 to $1250 per acre for larger tracts. Both SandRidge and Chesapeake were actively drilling and making multiple significant discoveries in the county and the play spread north from the Oklahoma border through Harper County and on towards Kingman County.

31. In 2012, both companies were mobilizing multiple drilling rigs and undertaking aggressive exploration and development drilling programs. In spite of drilling and announcing numerous discoveries immediately to the east and south of Orinoco's property, Chesapeake, in 2012, suddenly ceased all activity in the general area, including leasing, leaving many land owners with worthless offers. However, they continued aggressive leasing and drilling in other select areas. Land that Chisholm had leased to Chesapeake earlier ended up in a Sandridge production pool.

32. Drilling activity continued at a constant pace throughout 2012-2014 as oil prices remained very high, but by the time Orinoco's leases were available, Sandridge was the only offer at $300 per acre.

33. Upon information and belief, Chesapeake along with the Defendants and Sandridge, between them, illegally "divided up" the geographic area covering the Anadarko Basin Region in Kansas, and other states, and agreed not to compete and drive up prices for leasehold interests in each other's assigned area.

34. But for the activities of Defendants described herein, the value of Plaintiffs' Kansas Leasehold Interests in a competitive market would have been greatly in excess of the price of $500 per acre paid by Chesapeake.

## C. INDICTMENT OF AUBREY MCCLENDON

35. On March 1, 2016, a grand jury indicted McClendon and other unnamed co-conspirators on the charge of engaging in an unreasonable restraint of commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The basis of the indictment was the combination and conspiracy that Mr. McClendon and unnamed and unknown co-conspirators engaged in to suppress and eliminate competition by rigging bids and/or agreeing to not bid for certain leasehold interests and producing properties. Chesapeake was one of the unnamed co-conspirators and it was widely reported that SandRidge and Tom Ward were also unnamed co-conspirators.

36. The purpose of the combination and conspiracy was to suppress the prices that Chesapeake and SandRidge paid to acquire certain leasehold interests and producing

properties by eliminating competition between Chesapeake and SandRidge for the purchase of such leasehold interests and producing properties.

37. According to the indictment, Defendants accomplished the combination and conspiracy by:

a) engaging in communications concerning certain leasehold interests and producing properties, and the prices therefor;

b) agreeing during those communications that Chesapeake and SandRidge would not compete against one another for certain leasehold interests and producing properties either by one company not submitting offers or bids to certain owners of leasehold interests and producing properties, or by one company withdrawing previously submitted offers or bids to certain owners of leasehold interests and producing properties in exchange for a share or a subset of the leasehold interests and/or producing properties purchased by the other company at the acquisition cost;

c) submitting offers or bids, withholding offers or bids, or acting to withdraw previously submitted offers or bids, to owners of certain leasehold interests and producing properties in accordance with the agreement reached;

d) acquiring certain leasehold interests and producing properties at collusive and noncompetitive prices and then providing the nonacquiring co-conspirator a share or a subset of the leasehold interests and/or producing properties at the acquiring co-conspirator's cost; and

e) employing measures to keep their conduct secret, including, but not limited to, agreeing not to reveal their anticompetitive agreement to the owners of the leasehold interests and producing properties at issue, and instructing their subordinates to do the same.

38. The above-described combination and conspiracy artificially depressed the prices of the leasehold interests and producing properties that Chesapeake and SandRidge purchased. The combination and conspiracy affected not only the interests and properties that Chesapeake and SandRidge purchased, but also the overall market. Thus, sellers of leasehold interests and producing properties, including Plaintiffs, received less value than they would have in a competitive market. Mr. McClendon derived considerable personal

benefits from the combination and conspiracy through the Chesapeake "Founder Well Participation Program" ("FWPP"). The FWPP permitted Mr. McClendon to continue participating as working interest owners in new oil and natural gas wells drilled by the Chesapeake. Mr. McClendon was thus permitted to participate in all of the wells spudded by or on behalf of Chesapeake during each calendar year. Tom Ward's participation rights in the FWPP terminated on August 10, 2006, the date he resigned from Chesapeake. Defendant Ward, however, did participate in a similar program at SandRidge, which was called the "SandRidge Executive Well Participation Program," during the Relevant Time Period. Mr. Ward was able to participate in all of the wells spudded by or on behalf of SandRidge throughout the Relevant Time Period. On information and belief, Mr. Ward did in fact participate in such wells. Thus, Defendant Ward, like Mr. McClendon, obtained personal benefits from the combination and conspiracy.

## TOLLING OF THE STATUTE OF LIMITATIONS

39. Plaintiffs had neither actual nor constructive knowledge of the facts constituting their claim for relief. As alleged in the indictment of Aubrey McClendon, the defendants engaged in private communications, under the cloak of secrecy in furtherance of their conspiracy and employed "measures to keep their conduct secret, including, but not limited to, agreeing not to reveal their anticompetitive agreement to the owners of the leasehold interests and producing properties at issue in this Indictment, and instructing their subordinates to do the same." In addition, the deception was necessary to keep the prices for leases and producing properties depressed.

40. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until on or about March 1, 2016, the date on which the indictment of Mr. McClendon and the unnamed co-conspirators became public.

41. Defendants engaged in a secret conspiracy that did not reveal facts that would put Plaintiffs on inquiry notice that there was a conspiracy to fix prices for leasehold interests and producing properties. Plaintiffs did not know that the reason for the withdrawal of bidders other than Chesapeake for the mineral interests at issue was due to a conspiracy to acquire those interests at depressed prices.

42. Accordingly, Plaintiffs could not have had either actual or constructive knowledge of the price fixing scheme until the indictment of Mr. McClendon and the unnamed co-conspirators became public.

43. Because Defendants' agreement, understanding and conspiracy was kept secret, Plaintiffs were unaware of Defendants' unlawful conduct alleged herein and did not know that the prices for which they sold their producing properties were artificially depressed.

## COUNT I

### Violation of Section 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3)

44. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein. Defendants and their co-conspirators engaged in a continuing combination and conspiracy to rig bids and unlawfully depress the prices of leasehold interests and producing properties within the United States, its territories, and the District of Columbia in violation of Section 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

00316184-1

13

45. Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by bid rigging and depressing the prices for leasehold interests and producing properties below competitive levels.

46. In formulating and effectuating their combination or conspiracy, Defendants and their co-conspirators engaged in bid rigging and other anticompetitive activities, the purpose and effect of which were to artificially depress the price of leasehold interests and producing properties.

47. The illegal combination and conspiracy alleged herein had the following effects, among others:

a. The prices Defendant Chesapeake paid Plaintiffs for their Kansas Leasehold Interests were artificially depressed below competitive levels;

b. Plaintiffs have been deprived of free and open competition in sales of their Kansas Leasehold Interests;

c. Plaintiffs sold their Kansas Leasehold Interests for less than they would have had they sold in a competitive marketplace where Defendants' combination and conspiracy was absent;

d. Competition for the purchase of leasehold interests and producing properties has been restrained.

48. As a direct and proximate result of Defendants' conduct, Plaintiffs have been collectively injured and damaged in their business and property in an amount to be determined according to proof, but believed to be in excess of ten million dollars ($10,000,000.00).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A. That the Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Sections 1 and 3 of the Sherman Act;

B. That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiffs;

C. That the Court award Plaintiffs actual and treble damages;

D. That the Court award Plaintiffs attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law;

E. That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their coconspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

F. That the Court award Plaintiffs such other and further relief as may be deemed necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a jury trial on all matters so triable.

Dated: July 13, 2016                    Respectfully Submitted,

By:_____/s/ James P. Frickleton_____
James P. Frickleton, KS Bar No. 20602
Edward Robertson, III, KS Bar No. 23028
Bartimus, Frickleton & Robertson, P.C.
11150 Overbrook Road, Suite 200
Leawood, Kansas 66211
(913) 266-2300 Tel
(913) 266-2366 Fax
jimf@bflawfirm.com
krobertson@bflawfirm.com


Robert Redfearn (La. Bar No. 11418)
(Pro Hac Vice Pending)
Robert Redfearn, Jr. (La. Bar No. 17106)
(Pro Hac Vice Pending)
Simon, Peragine, Smith & Redfearn, L.L.P.
1100 Poydras Street, 30TH Floor
New Orleans, LA 70163
Telephone: (504) 569-2994
Robertjr@spsr-law.com